IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
CIVIL COURT DEPARTMENT

| | |
|---|---|
| WILLIAM and SILVIA AVERY,<br>two individuals,<br><br>                   Plaintiffs,<br><br>      vs.<br><br>CURTIS O. BARNES, PC, a/k/a and/or d/b/a<br>LAW OFFICE OF CURTIS O BARNES, PC<br>**Serve:**    **Curtis O. Barnes**<br>           **Registered Agent**<br>           **390 W. Cerritos**<br>           **Anaheim, CA 92805**<br><br>and<br><br>LAW OFFICE OF CURTIS O. BARNES, PC,<br>a California professional corporation,<br>**Serve:**    **Curtis O. Barnes**<br>           **Registered Agent**<br>           **390 W. Cerritos**<br>           **Anaheim, CA 92805**<br><br>                Defendants. | Civil Action No.: <u>13-cv-2492 RDR</u>/KGS<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiffs William and Silvia Avery, for their Complaint against the defendants, the Law Office of Curtis O. Barnes, PC and/or Curtis O. Barnes, PC (collectively "LOCOB"), state and allege as follows:

1.     This case seeks civil penalties and/or damages based on the defendants' knowing, repeated violations of the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.* ("KCPA") and of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

1

2.      The primary course of events at issue took place in August 2012, when one or more debt collectors working for the defendants made contact with the plaintiffs in several telephone conversations, purportedly to attempt to collect an alleged debt owed by the plaintiffs. In the process of their communications with the plaintiffs, the collectors and therefore the defendants violated each Act multiple times.

3.      As a direct result of their violations of the laws designed to protect consumers like the plaintiffs from unfair, deceptive, unconscionable, and misleading practices and communications, the defendants are liable to the plaintiffs and owe the plaintiffs actual damages, civil penalties in excess of $240,000, attorney's fees incurred in pursuing these claims, and other damages as allowed by law.

## Parties, Jurisdiction and Venue

4.      Plaintiffs are a married couple, each of whom is a resident of Kansas. Plaintiffs live in Junction City, Geary County, Kansas. Plaintiffs lived in Junction City at the times of the events described herein. Each of the plaintiffs is older than 60 years old.

5.      Defendant Curtis O. Barnes, PC is a California professional corporation with its principal place of business located in Anaheim, California. This defendant acts as a debt collector across the United Stated, including in Kansas. This defendant may be served with process by delivering a summons and a copy of this Complaint to its officers or managing employee at its principal place of business, and/or to its registered agent, Curtis O. Barnes, who offices at 390 W. Cerritos Ave., Anaheim, CA 92805, or as the defendant may otherwise be found and served pursuant to Kansas law and the Federal Rules of Civil Procedure.

6.      Defendant Law Office of Curtis O. Barnes, PC is a California professional corporation with its principal place of business located in Anaheim, California, and/or which is a

2

d/b/a of the first defendant, Curtis O. Barnes, PC.  This defendant acts as a debt collector across the United Stated, including in Kansas.  The defendant may be served with process by delivering a summons and a copy of this Complaint to its officers or managing employee at its principal place of business, and/or to its registered agent, Curtis O. Barnes, who offices at 390 W. Cerritos Ave., Anaheim, CA 92805, or as the defendant may otherwise be found and served pursuant to Kansas law and the Federal Rules of Civil Procedure.

7.      To the extent there are indeed two distinct legal entities between the defendants, market themselves as a single entity, called "Law Office of Curtis O Barnes, PC" (with no period after the "O").  This entity and/or d/b/a is itself a debt collector.  It has a website with the URL address www.locob.com.  Due to the similarity and close identity of the two defendants, they are collectively called "LOCOB" herein.

8.      The Court has both federal question subject matter jurisdiction and diversity subject matter jurisdiction over these claims, pursuant to 28 U.S.C. §§ 1331 and 1332, respectively.

9.      The Court has personal jurisdiction over the defendant pursuant to Fed. R. Civ. P. 4(h)(1)(A) and (B), and K.S.A. § 60-308(b)(A), (B), (G), and/or (L).

10.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2).

### General Allegations

11.     During August 2012, representatives of defendants contacted the plaintiffs by telephone.  The phone calls in question generally occurred on and after August 20 and 21, 2012.

12.     The purported purpose of the phone calls was to collect an alleged debt.  The defendants' agents alleged that the plaintiffs owed money to Fortis Capital IV, LLC in the

alleged amount of approximately $5,051, in relation to an unsecured consumer loan account originally held by HSBC Beneficial a/k/a Beneficial Finance.

13.     At all times during the phone calls in question, the representatives of the defendants who called the plaintiffs were working as disclosed agents for the defendants with the full authority of the defendants.

14.     In their attempts to collect the alleged debt, the representatives of defendants undertook a number of actions, said a number of things, and omitted important information during their communications with the plaintiffs.  These acts and omissions by the defendants and their agents were deceptive, unconscionable, misleading, and/or unfair pursuant to federal and state consumer protection laws, including but by no means limited to the following:

    a.  The defendants' agent told Mr. Avery that his account "was documented as willful and deliberate evasion of your contractual obligation."  This is patently false; the legal basis of the collection effort, if accurate, would simply be breach of contract.  The implication of this threat is that there are additional legal remedies available to a creditor when there is an "intentional breach of contract," which is false.

    b.  The defendants' agent stated that with a payment plan of $200 per month on an alleged $5,000 account at 14.5% interest, as the plaintiffs had proposed, "nothing will be going towards the principal balance."  This is false.  The payments received would have been at least $2,400 per year based on this payment plan; one year's worth of interest even on the total alleged principal amount (which would immediately begin reducing) would only be $725.

    c.  The defendants' agent told Mr. Avery that the defendants were "being forced" to hire an attorney in the area "at your expense."  No one was forcing the defendants to hire any attorney, and it could not have been "at the expense" of Mr. Avery unless a number of other actions happened first.

    d.  The defendants' agent told Mr. Avery that the creditor would "utilize your home as being an asset in order to get this situation taken care of."  This is false, because neither the defendants nor their client held a mortgage on the Avery home.

    e.  The defendants' agent told Mr. Avery that the ability of the alleged creditor to use post-judgment collection methods meant that the defendants and the creditor were

4

"not your average fly-by-night operation."  This is false and illusory – legal post-judgment collection remedies are available to any creditor who holds a judgment. The defendants' threat of them against the Averys does not make them upstanding collections agencies (*i.e.*, "not fly-by-night").

f.   The defendants' agent told Mr. Avery that the creditor "usually gives 30 days to resolve this outside of court."  He then told Mr. Avery that Mr. Avery was already on day 31, meaning he needed to make an immediate decision to pay significant funds to the collector.  This was false – Mr. Avery was not "on day 31" in relation to any legitimate collections schedule he had been made aware of; this was merely a threat to Mr. Avery to force him to pay.  On information and belief, the defendant does not have any "sue after just 30 days" policy, particularly on an alleged account of the size and geographic location of the plaintiffs.

15.   Multiple violations of the federal and state consumer protection laws can occur during a single phone call or single communication, and they did here.

16.   In addition to the violations outlined above, the defendants' agent(s) told Mrs. Avery the same things during a second phone call.  Therefore, there are a total of at least 12 violations of federal and state law at issue here, and potentially more.

17.   The defendants knew or should have known their (and their agents') conduct had multiple violations of federal and state consumer protection laws.

18.   Defendants are in the business of collecting consumer loans and have, or should have, detailed procedures for how to contact and communicated with consumers about their debt, as well as detailed internal training for how to follow the procedures.

19.   Either the defendants' representatives failed to follow the defendants' internal procedures in their communications with the plaintiffs, or the defendants do not have appropriate internal procedures and training for ensuring their employees and agents know how to carry out communications with consumers pursuant to federal and state consumer protection laws.

20.   The defendants failed to adequately train or devise procedures for their employees to follow in their communications with alleged debtors.  The defendants knowingly and

intentionally, or else recklessly, failed to take steps to ensure these and similar violations would not happen, and/or the defendants have over time ratified the misconduct of their agents in violating federal and state consumer protection laws.

21.     The defendants have been named in a number of lawsuits around the country for the same or similar violations of federal and state consumer protection laws.  It therefore appears their violations of consumer protection laws is a continuing, on-going issue that the defendants have not addressed, including for many people who have not yet filed suit or made claim based on the violations.

22.     On information and belief, there are many more aggrieved consumers both within and outside the state of Kansas, who have been the victims of the same or similar deceptive, unconscionable, and/or unfair debt collection practices on consumer debt, such that the defendants' practices are widespread and are part of defendants' standard operating procedure, custom, practice and habit.

23.     On August 19, 2013, plaintiffs and the defendants timely entered a one-month tolling agreement as to any statute of limitations over any and all claims asserted herein.

### Count I – Violations of the Kansas Consumer Protection Act

24.     Plaintiffs incorporate by reference all previous allegations set forth above, as though fully set forth herein.

25.     The plaintiffs are "consumers" as well as "persons" under the KCPA (K.S.A. § 50-623, *et seq.*).  K.S.A. § 50-624(b) and (i).

26.     The defendants are a "supplier" as well as a "lender" under the KCPA.  K.S.A. § 50-624(f) and (1).

6

27.     The defendants provided "services" to the plaintiffs in relation to a "consumer transaction" under the KCPA.  K.S.A. § 50-624(c) and (k).

28.     The KCPA applies to and governs the defendants' duties and obligations to its dealings with the plaintiffs.

29.     The defendants and/or their agents violated the KCPA by committing various deceptive acts and practices, in violation of K.S.A. § 50-626, and/or unconscionable acts and practices, as forbidden by K.S.A. § 50-627, the particulars of which are as set forth previously in this pleading.

30.     Plaintiffs are entitled to bring this private civil cause of action against defendants for the violations at issue, pursuant to K.S.A. § 50-634(b).

31.     The plaintiffs sustained damages as a direct and proximate result of defendants' conduct in violation of the KCPA, and plaintiffs are entitled to recover them pursuant to K.S.A. § 50-634(b).

32.     The plaintiffs are entitled to recover civil penalties based on the defendants' violations of the KCPA, including but not limited to at least the following:

   a. A civil penalty of $10,000 per violation for at least the six violations shown above as to each plaintiff (a total of at least 12 violations), and others as may be proven at trial, pursuant to K.S.A. § 50-636; and

   b. An increased penalty amount to $20,000 per violation as a result of the plaintiffs each being above age 60, pursuant to K.S.A. § 50-677.

Accordingly, plaintiffs are entitled to recover at least $240,000 in civil penalties pursuant to these provisions and K.S.A. § 50-634(b).

33.     On information and belief, other violations and ongoing violations by the defendants are occurring as would warrant further and additional civil penalties pursuant to K.S.A. § 50-636(d).

7

34.     Defendants are liable to pay attorney's fees to the plaintiffs, pursuant to K.S.A. § 50-634(e).

35.     Defendants are liable to pay plaintiff the costs and expenses of the action, and prejudgment interest on these claims.

36.     Defendants are liable to pay plaintiffs any and all other monetary relief allowed by the KCPA.  Plaintiffs reserve their right to amend their claims to seek punitive damages, pursuant to the violations of the KCPA and/or otherwise.

WHEREFORE, plaintiffs pray for money judgment against the defendants in an amount in excess of $75,000, as set forth above and/or as will be proven at trial, for their attorneys' fees in addition, for the costs and expenses of this action, and for all other relief against the defendants allowed by the Kansas Consumer Protection Act and/or deemed appropriate by the Court.

## Count II – Violations of the Fair Debt Collection Practices Act

37.     Plaintiffs incorporate by reference all previous allegations set forth above, as though fully set forth herein.

38.     The transactions and communications between the parties also fell under and are governed by the FDCPA, 15 U.S.C. § 1692, *et seq*.

39.     The plaintiffs are natural persons who have been harmed by violations of the FDCPA, and are "consumers" within the meaning of 15 U.S.C.A. §§ 1692a(3) and 1692(d).

40.     There is an alleged "debt" at issue arising out of a transaction entered primarily for personal, family, or household purposes, pursuant to 15 U.S.C.A. § 1692a(5).

41.     The defendants were collecting the alleged debt and are a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6).

42.    The defendants have violated, by acts and/or omissions, provisions of the FDCPA, including but not limited to 15 U.S.C.A §§ 1692a-1692o, by the unfair and misleading acts and omissions set forth previously in this pleading.

43.    Plaintiffs may bring a cause of action against defendant pursuant to 15 U.S.C.A. § 1692k and other related provisions.

44.    Defendants are aware of the FDCPA and its requirements and have an obligation to adequately train and supervise their employees and agents in the FDCPA and how to conduct themselves in their communications with alleged debtors like the plaintiffs.  Defendants failed in these duties as well, thereby further violating the FDCPA.  Alternatively, the defendants' agents and employees knowingly violated their duties to the plaintiffs under the FDCPA and ignored their training and supervision.

45.    As a direct and proximate result of the defendants' violations of the FDCPA, plaintiffs sustained actual damages, including but by no means limited to their emotional distress and time incurred having to deal with the unfair, harassing and false communications by the defendants, and plaintiffs are entitled to recover them pursuant to the FDCPA.  15 U.S.C. § 1692k.

46.    In addition, plaintiffs are entitled to a statutory civil penalty or penalties in the amount of at least $1,000 per plaintiff, if not more, pursuant to 15 U.S.C. § 1692k(a).

47.    On information and belief, other violations and ongoing violations by the defendants are occurring as would warrant further and additional civil penalties.

48.    Defendants are liable to pay attorney's fees to the plaintiffs, pursuant to 15 U.S.C. § 1692k.

49.     Defendants are liable to pay plaintiffs any and all other monetary relief allowed by the FDCPA, including the costs and expenses of this action and prejudgment interest. Plaintiffs reserve their right to amend their claims to seek punitive damages, pursuant to the violations of the FDCPA and/or otherwise.

WHEREFORE, plaintiffs pray for money judgment against the defendants in an amount in excess of $75,000, as set forth above and/or as will be proven at trial, for their attorneys' fees in addition, for the costs and expenses of the action, for prejudgment interest on their claims, and for all other relief against the defendant allowed by the Fair Debt Collection Practices Act and/or deemed appropriate by the Court.

Respectfully submitted,


    s/ Andrew M. DeMarea
Andrew M. DeMarea              (KS#16141)
KENNER SCHMITT NYGAARD LLC
117 W. 20th St., Suite 201
Kansas City, MO 64108
(816) 531-3100
Fax No. (816) 531-3600
andy@ksnlegal.com

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a true and accurate copy of the foregoing Complaint is being served via U.S. Mail, first-class and postage prepaid, to the Attorney General for the State of Kansas, pursuant to K.S.A. 50-634(g), on this __19th__ day of September, 2013, addressed to:

Hon. Derek Schmidt
Office of the Kansas Attorney General
ATTN:  Consumer Protection Division
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612

_____s/_____Andrew M. DeMarea_____
Counsel for Plaintiffs
